IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES R. BENEKE, INC. on behalf of Itself and as Assignee of the claims of ADJUSTERS INTERNATIONAL, INC., | § § § § | |
| Plaintiffs, | § § | |
| V. | § § | A-05-CA-927 RP |
| AON RISK SERVICES, INC. OF GEORGIA, AON RISK SERVICES OF NEW YORK, INC. LEXINGTON INSURANCE COMPANY, | § § § § § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants Aon Risk Services of New York, Inc. and Aon Risk Services, Inc. of Georgia's Motion for Summary Judgment on Claims For Tortious Interference With Contract, filed August 10, 2007 (Clerk's Dkt. #90); Plaintiff's Response to Defendants Aon Risk Services of New York, Inc. and Aon Risk Services, Inc. of Georgia's Motion for Summary Judgment on Claims For Tortious Interference With Contract, filed August 24, 2007 (Clerk's Dkt. #92); and Defendants Aon Risk Services of New York, Inc. and Aon Risk Services, Inc. of Georgia's Reply in Support of Their Motion for Summary Judgment on Claims For Tortious Interference With Contract, filed September 4, 2007 (Clerk's Dkt. #95). After reviewing the parties' pleadings, relevant case law, as well as the entire case file, the undersigned issues the following order.

### I.  BACKGROUND

Plaintiff James R. Beneke, Inc. on behalf of itself and as assignee of the claims of Adjusters International, Inc. ("Beneke"), filed Plaintiff's Original Petition in the 345th Judicial District Court of Travis County, Texas on September 28, 2005. Defendants removed the action to this Court on November 3, 2005. Plaintiff was later granted leave to amend the complaint to add various defendants and claims. Following the dismissal of certain defendants and claims, the remaining

named defendants are Aon Risk Services, Inc. of Georgia, Aon Risk Services of New York, Inc. (collectively "Aon") and Lexington Insurance Company ("Lexington"),

The basic facts underlying this action are undisputed.  Beneke performs insurance adjustment services, representing insureds, under an operating agreement with Adjusters International.  Driftwood Hospitality Management, L.L.C. ("DHM"), Driftwood Ventures, Inc. ("DVI") and Driftwood Freeport Limited ("DFL") (collectively "Driftwood") own and operate hotels, through a variety of subsidiaries, including the Crowne Plaza Golf Resort and Casino ("Crowne Plaza") located in the Bahamas.  Crowne Plaza was damaged in 2004 by Hurricane Francis.  Lexington was the lead insurance carrier for Crowne Plaza and Aon was the insurance broker.

In his declaration, Jim Beneke avers:

> On September 8, 2004, Bill Adams, who is an independent adjuster for McClarens Young International, called me.  Adams informed me that he had been called by Driftwood's former insurance agency in Fort Worth, Texas – McQueary, Henry, Bowles and Troy ("McQueary") – about a Hurricane Frances claim in the Bahamas.  McQueary asked Adams if he could work on the claim for the insured as a public adjuster.  Adams could not and he suggested that McQueary speak to me.
>
> Later that morning I spoke with a representative at McQueary and discussed the claim.  That person gave me the name of Mike Diaz at Driftwood and suggested that I call him.
>
> I called Diaz and we agreed to meet in Fort Lauderdale on the morning of September 10, 2004 to take a charter plane to visit the Crowne Plaza.

(Plf. Resp. Ex. A ("Beneke Decl.") ¶¶ 7-9) (paragraph numbers omitted).  According to Mike Diaz ("Diaz"), Vice President of DFL:

> Shortly after Hurricane Frances, I received a call from Mr. James Beneke.  Mr. Beneke identified himself as a representative of Adjusters International, Inc., a New York-based company that specialized in the provision of public insurance claim adjustment services, and explained that he had learned that DFL had recently suffered an insured loss at the [Crowne Plaza] Resort, and might therefore be interested in the type of services that Adjusters International, Inc. could provide.
>
> Mr. Beneke explained to me on the call that he had learned of DFL, and its potential need for insurance claim adjustment services from one or more representatives of McQueary, Henry, Bowles & Troy ("McQueary"), an insurance brokerage firm that was familiar with DFL from prior business dealings wholly unrelated to the insurance

> policies under which DFL's Hurricane Frances-related claims were to be made. While I had previously spoken with McQueary and told them we would entertain calls from adjusters regarding the loss, neither I nor anyone else from DFL asked McQueary to contact any particular adjuster, including Mr. Beneke or Adjusters International, Inc., much less suggest that McQue[a]ry contact anyone in Texas.
>
> At the conclusion of the call with Mr. Beneke, Mr. Beneke offered to meet with me in Florida to further discuss the services that Adjusters International, Inc. could provide and to accompany me to the [Crowne Plaza] Resort to survey the damage. Thereafter, on September 9, 2004, Mr. Beneke, along with Scott Davidson, also of Adjusters International, Inc., met with me in Florida.

(Driftwood Mot. to Dism. Aff. of Charles Michael Diaz ¶¶ 9-11) (paragraph numbers omitted).

Jim Beneke, on behalf of Beneke, traveled to and toured the Crowne Plaza on September 10, 2004. On September 11, 2004 Beneke submitted a written proposal to Driftwood to perform adjustment services. Beneke was to be paid a percentage of the net insurance claim as its fee. Beneke was told the proposal had to be agreed to by Lehman Brothers Holdings, Inc. ("LBH"), due to LBH's investment in the Crowne Plaza. ("Beneke Decl. ¶ 12). On September 13, 2004 Plaintiff was told LBH had approved the agreement between Driftwood and Beneke. Driftwood faxed a signed copy of the written agreement ("the Agreement") to Beneke that same day. (*Id.* ¶¶ 13-14). Beneke immediately began to perform under the Agreement. (*Id.* ¶ 15). However, Beneke maintains during a conference call involving the President of DVI and representatives of Aon on September 20, 2004, Driftwood was pressured to use Aon's in house consultants, rather than Beneke. Driftwood terminated the Agreement on September 21, 2004. (*Id.* ¶¶ 16-17).

Jim Beneke admits, although he was licensed as a public insurance adjuster in Texas since March 31, 2004, he did not apply to Florida for a Non Resident Public Adjuster license until September 2, 2004. Due to the need to correct certain deficiencies in his original application, his Florida license did not become effective until September 29, 2004. (*Id.* ¶¶ 2-6).

By way of this suit, Plaintiff asserts the conduct of Defendants Aon and Lexington constituted tortious interference with a contract. Alternatively, Beneke claims the conduct of Defendants Aon and Lexington constituted tortious interference with a prospective business

relationship.

Aon has now moved for partial summary judgment solely as to Plaintiff's claim for tortious interference with contract. Aon maintains the Agreement is void and Beneke cannot, therefore, succeed on his claim of tortious interference with a contract. The parties have filed responsive pleadings and this matter is now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir. 1992).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 110, 122 (1993). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Mississippi River*

*Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

### III.  ANALYSIS

Aon seeks summary judgment as to Plaintiff's claim for tortious interference with contract. According to Aon, the Agreement is void under either Texas or Florida law and Plaintiff's claim thus fails. Beneke disagrees and further contends Aon's attack on the validity of the Agreement fails because the law of the Bahamas governs the claim. Before addressing the substance of Aon's argument, the Court must first determine the threshold issue of which jurisdiction's law should govern the claim.

**A.  Choice of Law**

Aon contends Florida law should govern this dispute, because Florida has the most significant relationship with the Agreement as it was solicited and signed there, but alternatively suggests the law of Texas could also be applied. Beneke argues Bahamian law should govern because the Crowne Plaza is located there and because the Agreement was executed by DFL, a Bahamian corporation.[1]

In diversity cases in which there is a dispute as to which state's law controls, federal courts apply the choice-of-law principles of the forum state, in this case Texas. *Erie R.R Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938); *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 241 (5th Cir. 1993). Texas courts use the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws for all choice of law cases other than contract cases which include a

---

[1] The Court has previously considered the issue of choice of law in this case and concluded the law of Texas was applicable to Beneke's claims for breach of contract against other parties. That conclusion, however, was based on the concessions of those parties and Plaintiff that the laws regulating those claims was substantially similar in each jurisdiction. Neither Aon nor Beneke has made such a concession as to the claims at issue here. Accordingly, the Court will substantively address the matter of choice of law.

valid choice of law contract provision. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420- 21 (Tex. 1984)); *Askanase v. Fatjo*, 130 F.3d 657, 670-71 (5th Cir. 1997); *Minnesota Mining & Mfg. Co. v. Nishika, Ltd.*, 953 S.W.2d 733, 735-36 (Tex. 1997).  As the Agreement does not contain a choice of law provision, the "most significant relationship" test governs this issue.

Four matters are to be taken into account in resolving a conflict of law governing a tort claim: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145.  This Court must evaluate these contacts according to their relative importance with respect to the particular issue.  *Id.*; *Texas Taco Cabana, L.P. v. Taco Cabana of New Mexico*, 304 F. Supp. 2d 903, 908-09 (W.D. Tex. 2003).

Plaintiff concedes the negotiation of the Agreement took place in Florida.  (Plf. Resp. at 5). Further, it is uncontested that the principal place of business for the Driftwood entities is Florida. Presumably, the insurance proceeds would have been received there and Plaintiff's fee would have been paid from those proceeds.  Thus, it appears the injury occurred in Florida.

As to the conduct causing the injury, the parties have failed to present any evidence as to the geographical location of Aon's representatives during the time at issue.  The evidence suggests that the conference call in which Driftwood's president was allegedly pressured to terminate the Agreement was taken by Driftwood's president in Florida.  Further, because the principal place of business for the Driftwood entities is Florida, the termination of the Agreement emanated from Florida.

Beneke is a Texas corporation with its principal place of business in Texas.  Aon consists of a Georgia and a New York corporation.  Aon has not presented any evidence as to its principal place of business.

6

Finally, the relationship between the parties was clearly centered in Florida. Beneke contacted Driftwood in Florida, Jim Beneke traveled to Florida to meet representatives of Driftwood, the Agreement was negotiated in Florida and Diaz signed the Agreement in Florida.

Taken together, these contacts indicate Florida law applies to the tort claims because, although the parties are not located in Florida, the tortious injury occurred there, the conduct causing the injury was felt in Florida, and the relationship between the parties was clearly centered in Florida. This is not the end of the analysis, however.

The contacts identified in section 145 are to be considered under principles set forth in section 6 of the Restatement. Section 6 instructs courts to consider:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6. Beneke maintains Florida had no interest in the matter because the Agreement was executed between DFL, a Bahamian corporation, and Beneke, a Texas corporation. Plaintiff further argues Florida could have no interest in the loss suffered by the Crowne Plaza because the resort is located in the Bahamas.

Not surprisingly, Aon disagrees. Aon argues Florida has a strong interest in protecting its citizens, namely Driftwood, in their dealings with insurance adjusters, regardless of where the loss was suffered. As Aon points out, Florida has a comprehensive regulatory scheme for the licensing of insurance adjusters doing business in Florida.

The undersigned finds Aon's argument compelling. The only connection between the conduct which Plaintiff seeks recovery for, namely the acts of Aon which allegedly constituted tortious interference with the Agreement, and the Bahamas, is the location of the Crowne Plaza.

None of the conduct at issue here occurred in the Bahamas.  Moreover, although Beneke contends, as set more fully below, he did not solicit business in Florida but was merely responding to Diaz' invitation, he nonetheless contracted to perform insurance adjusting services for entities whose principal place of business was in Florida.  Further, he negotiated the Agreement in Flroda.  The allegedly actionable conduct of Aon was aimed at the Driftwood entities, their representatives and Plaintiff, all of whom were in Florida at the time.  Accordingly, the Court concludes Florida law governs Beneke's claim for tortious interference with contract.

**B.  Void Contract**

Aon contends Beneke cannot succeed on a claim of tortious interference with contract because the Agreement is void.[2]  Under Florida law, the elements of a claim for tortious interference with a contractual relationship are: (1) the existence of a contract, (2) the defendant's knowledge of that contract, (3) an intentional and unjustified interference by the defendant with the plaintiff's rights under the contract, and (4) resulting damages.  *Ace Pro Sound & Recording, LLC v. Albertson*, __ F. Supp. 2d __, 2007 WL 988867, at *8 (S.D. Fla. Apr. 1, 2007); *Thompson v. Rinker Materials, Inc.*, 390 F. Supp. 2d 1165, 1168 (M.D. Fla. 2005); *Mariscotti v. Merco Group At Akoya, Inc.*, 917 So.2d 890, 892 (Fla. 3rd Dist. Ct. App. 2005); *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th Dist. Ct. App. 1999).  Florida courts appear undecided as to whether a contract which is simply unenforceable can still form the basis for a valid claim of tortious interference with a contractual relationship.  *See, e.g., Mariscotti*, 917 So. 2d at 892 (if contract between initial buyer and seller is unenforceable, then element of tortious interference claim is absent); *Sullivan v. Econ. Research Props.*, 455 So. 2d 630 (Fla. 5th Dist. Ct. App. 1984) (where there is no contract, because requisite contractual term had not been met, plaintiff had no claim for tortious interference with contract).  *But see Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.*, 485 F.3d 1233,

---

[2] Aon argues the Agreement is void under both Florida law and Texas law.  The Court need not consider the matter under Texas law because the undersigned has concluded Florida law governs this dispute.

1243 (11th Cir. 2007) (under Florida law, plaintiff can maintain cause of action against third party for tortious interference in contract even though he might not be able to enforce underlying contract); *Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 133, 1336 (S.D. Fla. 2001) (to properly plead claim for tortious interference with contractual or business relationship under Florida law, plaintiff must assert existence of a business relationship, not necessarily evidenced by enforceable contract); *United Yacht Brokers, Inc. v. Gillespie*, 377 So. 2d 668 (Fla. 1979) (claim of tortious interference exists even if underlying contract is unenforceable); *Seminole Tribe of Florida v. Times Pub. Co., Inc.*, 780 So.2d 310, 315 (Fla. 4th Dist. Ct. App. 2001) (to properly plead claim for tortious interference with contractual or business relationship under Florida law, plaintiff must assert existence of a business relationship, not necessarily evidenced by enforceable contract).  However, Aon has not moved for summary judgment simply because the Agreement was not enforceable, but because it is void as violative of Florida law and public policy.  A contract which is void ab initio cannot form the basis for a claim of tortious interference with contract under Florida law.  *See Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.*, 479 F.3d 1310, 1312 (11th Cir. 2007) (under Florida law, claims for intentional interference with advantageous business relationships and breach of contract could not be maintained, where the contract interfered with or breached was void ab initio as conflicting with provisions of Florida's Pari-Mutuel Wagering Act); *Thomas v. Ratiner*, 462 So. 2d 1157, 1160 (Fla.3rd Dist. Ct. App. 1984) (action may lie for interference with unenforceable contract, and even perhaps voidable contract, but not for interference with contract void as against public policy).[3]

Aon first contends the Agreement is void ab initio because Beneke was not licensed as an insurance adjuster in Florida and thus violated Florida law in contracting to perform public adjuster services.  Under Florida law, the "solicitation" of public insurance adjusting business "requires

---

[3]. The undersigned also notes Aon has not moved for summary judgment as to Plaintiff's separately asserted claim for tortious interference with a prospective business relationship.

licensure as a public adjuster under the laws of Florida" and further "shall be engaged in only by persons licensed . . . as public adjusters." FLA. ADMIN. CODE ANN. r. 69O-220.051(3)(a) (2004). This section governing the conduct of insurance adjusters additionally provides that "[u]nlicensed persons shall not engage in such activity even under the supervision of a licensed public adjuster."

*Id*. The "solicitation of public adjusting business" is defined as:

> for compensation, initiating contact with any person, whether in person, by mail, by telephone, or otherwise, and therein seeking, causing, urging, advising, or attempting:
>
> 1. To have any person enter into any agreement engaging the services of a public adjuster in any capacity; or
>
> 2. To have any person subsequently speak or meet with a licensed public adjuster for the purpose of engaging the services of a public adjuster in any capacity or for the purpose of being advised by a public adjuster in any regard.

*Id*.

Plaintiff does not dispute he was not licensed under Florida law as a public insurance adjuster at the time of the events in question. Beneke argues nonetheless the Agreement did not violate Florida law because Jim Beneke did not solicit public adjusting business. Plaintiff contends rather that Jim Beneke was told to contact McQueary, who in turn told him to contact Driftwood. Plaintiff characterizes this string of events as initiated by Driftwood, thus not violative of the Florida prohibition against solicitation by a non-licensed adjuster.

The Court disagrees. The evidence, at best, establishes Jim Beneke heard from a third party that Driftwood was willing to be contacted concerning the Crowne Plaza damage claim. Based on this contact, Jim Beneke called a representative of Driftwood and arranged to meet with him for the purpose of engaging the services of Jim Beneke as a public adjuster. This conduct clearly falls within the definition of solicitation of public adjusting business under Florida law. Because Jim Beneke was not licensed in Florida at the time of the solicitation, his conduct was

10

clearly prohibited under Florida law.[4] The undersigned thus concludes the Agreement was void ab initio as violative of Florida law.

Aon alternatively contends the Agreement was void ab initio because it failed to meet the requirements of an emergency rule issued by the Florida Office of Insurance Regulation in the wake of Hurricane Frances. Under the rule, public insurance adjusters were required to give clients a fourteen day period in which to opt out of any contract relating to losses occurring as a result of Hurricane Frances. FLA. DEP'T OF FIN. SERVS. EMERGENCY R. 69BER04-13(1)(c) & (5)(e)1 (Sept. 3, 2004). Moreover, as Aon points out, under Florida law, the general rule is that an action for tortious interference will not lie where a party interferes with an at will contract. *Ferris v. S. Fla. Stadium Corp.*, 926 So.2d 399, 402 (Fla. 3rd. Dist. Ct. App. 2006); *Greenberg v. Mount Sinai Med. Ctr., Inc.*, 629 So.2d 252, 255 (Fla. 3rd. Dist. Ct. App. 1993). Thus, when the Agreement was cancelled, no actionable interference by Aon could have occurred. *See Mariscotti*, 917 So.2d at 892-93 (termination of at will contract cannot form basis of claim for tortious interference). Defendant Aon is not, therefore, liable to Plaintiff for tortious interference with a contract.

## IV.  CONCLUSION

Accordingly, it is ORDERED that Defendants Aon Risk Services of New York, Inc. and Aon Risk Services, Inc. of Georgia's Motion for Summary Judgment on Claims For Tortious Interference

---

[4] Beneke also argues the fact that a license had not yet been issued is of no moment because an application for a license had been made and was not immediately issued solely because of the need for additional information. Plaintiff does not, however, cite any authority which would exclude a person in the process of obtaining a license as a public adjuster from the clear language of Florida law prohibiting non-licensed adjusters from engaging in solicitation. The undersigned thus finds this argument unavailing.

With Contract (Clerk's Dkt. #90) is GRANTED.

SIGNED this 15th day of November, 2007.

_____
ROBERT PITMAN
UNITED STATES MAGISTRATE JUDGE
Presiding under 28 U.S.C. § 636(c)